UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOSEPH SOUZA,

    Petitioner,

v.                                                      CASE NO. 6:07-cv-22-Orl-31GJK

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

    Respondents.
_____

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 12). Petitioner filed a reply to the response (Doc. No. 16).

Petitioner alleges four claims for relief in his habeas petition: (1) trial counsel rendered ineffective assistance by failing to object to Petitioner wearing shackles; (2) trial counsel rendered ineffective assistance by failing to object to or move to suppress Petitioner's statement to police; (3) trial counsel rendered ineffective assistance by failing to obtain Petitioner's medical records to support a motion to suppress; and (4) trial counsel

rendered ineffective assistance by failing to strike or challenge biased jurors. For the following reasons, the petition is denied.

I.  *Procedural History*

Petitioner was charged with DUI manslaughter (count one), vehicular homicide (count two), and DUI with serious bodily injury (count three). After a jury trial, Petitioner was found guilty of counts one and three. The trial court entered a judgment of acquittal as to count two. The trial court sentenced Petitioner to a fifteen-year term of imprisonment as to count one and to a concurrent five-year term of imprisonment as to count two. Petitioner appealed, and the Fifth District Court of Appeal of Florida affirmed.

Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. The state trial court denied relief. Petitioner appealed, and the appellate court *per curiam* affirmed.

II.  *Legal Standards*

    A.  *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005), *cert. denied*, 127 S. Ct. 348 (2006). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[1] *Id*.

---

[1] In considering the "unreasonable application" inquiry, the Court must determine "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B. *Standard for Ineffective Assistance of Counsel*

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.² *Id.* at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

---

²In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### III. Analysis

#### A. Claim One

Petitioner asserts that trial counsel rendered ineffective assistance by failing to object to the use of shackles during trial. In support of his claim, Petitioner maintains that counsel was aware that the jury would be able to see the leg restraints on him, but failed to ask for the shackles to be removed or request a hearing regarding the necessity of the shackles. Petitioner maintains that the shackles affected the jury's ability to weigh and assess the credibility of the evidence.

Petitioner raised this claim in his Rule 3.850 motion. Applying *Strickland*, the trial court denied relief. *See* App. I at 7-8. The state court noted that counsel raised the issue of

whether the jury could see the shackles when Petitioner stood, and in response to counsel's concern, the trial court gave Petitioner the option to remain seated, but did not give him the option of removing the shackles. *Id*. at 8. The state court concluded that Petitioner had not demonstrated that a reasonable probability existed that the trial court would have removed the shackles if counsel had made such a request. *Id.* The state court further found that Petitioner's assertions regarding the jury's opinion of him was conclusory and speculative, and even if the jury glimpsed the shackles, Petitioner could not establish he was prejudiced. *Id.*

The United States Supreme Court has described shackling as an "inherently prejudicial practice." *Holbrook v. Flynn*, 475 U.S. 560, 568 (1986). When shackling is employed, there must be "close judicial scrutiny," *Estelle v. Williams*, 425 U.S. 501, 503-04, (1976), to ascertain if an "essential state interest" was furthered by requiring the defendant to wear shackles and whether less restrictive, less prejudicial methods of restraint were considered or could have been utilized. *Holbrook*, 475 U.S. at 569. However, if the claim relates to counsel's performance with respect to the issue of the use of shackles, the petitioner "still must show a reasonable probability that, absent his being shackled, . . ." the jury would not have found the petitioner guilty. *Marquard v. Secretary for Dept. of Corrections*, 429 F.3d 1278, 1314 (11th Cir. 2005) (requiring a finding of prejudice in a capital case when considering counsel's performance in relation to the petitioner being required to wear shackles during the penalty phase).

6

In the instant case, although counsel raised the issue of the use of shackles, he did not object to them or request a hearing regarding their use. Given the nature of this charge, it is unlikely that the shackling of Petitioner would be warranted under the *Holbrook*[3] standard, and counsel's failure to object was therefore deficient. However, even assuming counsel was deficient for failing to do so, as discussed more fully below, the jury heard Petitioner's audio taped statement to police wherein he admitted that he was driving at the time of the accident. Moreover, in the statement, Petitioner provided details regarding the events of that night that supported his assertion that he was driving the vehicle, such as how he buckled the deceased's seatbelt prior to the accident and how the other victim was effectively passed out in the backseat of the vehicle. Therefore, the Court cannot conclude that the state court's determination that Petitioner was not prejudiced by counsel's conduct was either contrary to or an unreasonable application of federal law. Accordingly, this claim is denied pursuant to § 2254(d).

### B.  *Claims Two and Three*

Petitioner asserts that trial counsel rendered ineffective assistance by failing to object to or move to suppress his audio taped statement to police (claim two) and by failing to obtain his medical records to support a motion to suppress (claim three). In support of these claims, Petitioner maintains that his audio taped statement wherein he admitted he was driving at the time of the accident was made while he was in the hospital under the influence of pain medication. Petitioner contends that he does not remember making the

---

[3] 475 U.S. 560 (1986).

statements, and he would not have done so without counsel if he had not been under the influence of narcotics. Petitioner asserts that he asked his attorney to file a motion to suppress his statement because he did not knowingly and voluntarily waive his right to remain silent and right to counsel. (Doc. No. 1 at 5-6.)

Petitioner raised these claims in his Rule 3.850 motion. Applying *Strickland*, the state court denied relief. *See* App. I at 3-4. The state court noted that pursuant to Florida law, "the use of alcohol and narcotics affect the weight and credibility to be given a confession, not its voluntariness." *Id.* at 3 (citing *Cox v. State*, 711 So. 2d 1323, 1325 (Fla. 5th DCA 1998)). The state court recognized, however, that the influence of such substances in some instances may be so extreme as to render a confession involuntary. *Id.* (citing *Harrison v. State*, 562 So. 2d 827, 827 (Fla. 2d DCA 1990)). The court determined that the relevant inquiry was "'whether the defendant [was] aware and able to comprehend in a general way what he [was] doing and to communicate with coherence and rationality.'" *Id.* (quoting *Burns v. State*, 584 So. 2d 1073, 1075 (Fla. 4th DCA 1991)).

In applying the applicable law to Petitioner's case, the state court found the following:

> Officer McKeown tried to interview [Petitioner] on the morning of the accident, but could not do so because [Petitioner] was heavily sedated. [Petitioner's] wife told the trooper to stop because [Petitioner] was going in and out of consciousness. When Officer McKeown returned the next day, he found [Petitioner] awake and lucid, although still in pain, and first checked with the nursing staff to make sure that [Petitioner] was not under the influence of medication before he conducted the interview. [Petitioner's] wife was present,

>   but significantly, she did not express any concerns about his ability to be interviewed this time.
>
>   There was a short break in the interview while a doctor checked him, but the doctor apparently did not express any concern about his ability to be interviewed, either. The interview was taped, and portions of the tape were played for the jury. Some of [Petitioner's] answers were inaudible, but those that were transcribed were rational, coherent, and specific, especially regarding work performed on the truck by the previous owner that caused it to "float around." He requested pain medication near the end of the interview.
>
>   All of the foregoing factors lead to the conclusion that [Petitioner] met the standard for comprehension and communication set forth in *Cox* and *Burns*. Therefore, the Court concludes his statements were knowing and voluntary, and counsel had no legal basis to file a motion to suppress.

*Id*. at 3-4. The state court further found that Petitioner's assertion that his medical records would have impeached Officer McKeown's testimony that the nurses told him that Petitioner was not given medication before the interview was speculation as no medical records were submitted to the court. *Id.* at 4. The state court also determined that Petitioner's assertion regarding counsel's failure to obtain the medical records was without merit. *Id.* The state court reasoned that even if Petitioner "did receive medication, it would still be necessary to consider whether the effect was so strong or his pain so severe as to render his statements involuntary, and as . . . already found, the record indicates that his statements were knowing and voluntary." *Id*. The trial court concluded, therefore, that Petitioner had not demonstrated a reasonable probability existed that a motion to suppress would have been granted if counsel had obtained the medical records. *Id.* at 4-5.

To determine whether counsel rendered ineffective assistance by failing to move to suppress Petitioner's statement and by failing to obtain Petitioner's medical records, the Court must consider whether the state court's determination that Petitioner's confession was voluntary and knowing was objectively unreasonable. *See Miller v. Fenton*, 474 U.S. 104, 112 (1985) (noting that the question of voluntariness is a mixed question of fact and law); *see also Barnes v. Elo*, 339 F.3d 496, 501 (6th Cir. 2003) (recognizing that on habeas review, courts must apply the "unreasonable application" prong of § 2254(d)(1) to mixed questions of fact and law).

The United States Supreme Court set forth a two-part test to determine whether a defendant's waiver of the rights guaranteed by *Miranda v. Arizona*, 384 U.S. 436 (1966), was voluntary, knowing, and intelligent. *See Moran v. Burbine*, 475 U.S. 412 (1986). First, the waiver of the *Miranda* rights must have been voluntary in that it was the result of a free and deliberate choice rather than intimidation, coercion, or deception. *Moran*, 475 U.S. at 421. Second, the defendant must have waived his right with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Id.* Courts may conclude the *Miranda* rights were waived only when the "totality of the circumstances surrounding the interrogation" reveal both the requisite level of comprehension and an uncoerced choice. *Id.* (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)) (citations omitted); *see also Hart v. Attorney General of State of Florida*, 323 F.3d 884, 891 (11th Cir. 2003) (adopting *Moran* test).

As to the first prong, whether the waiver was voluntary, the fact that a defendant suffers a mental disability whether drug-induced or otherwise does not alone render a waiver involuntary; instead, there must be coercion by an official actor. *United States v. Barbour*, 70 F.3d 580, 585 (11th Cir. 1995) (citing *Colorado v. Connelly*, 479 U.S. 157, 169-70 (1986)). With respect to the second prong, whether the waiver was made with "a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it," *see Moran*, 475 U.S. at 421, a defendant's impaired mental state whether drug induced or otherwise may prevent him from understanding the nature of his waiver. *See id.* (citing *Coleman v. Singletary*, 30 F.3d 1420, 1426 (11th Cir. 1994)).

In the instant case, the record reflects that at trial Officer McKeown testified that he attempted to interview Petitioner on April 14, 2002, the morning of the accident, but was unable to do so because Petitioner was heavily sedated. (App. A at 165.) He stated, however, that he was able to interview Petitioner on April 15, 2002. *Id.* He testified that he spoke with nurses prior to interviewing Petitioner and was advised that he had not been medicated that day. *Id.* at 166. Officer McKeown indicated that Petitioner was in pain at the time of the interview, but was lucid. *Id.* at 165-66. He testified that he read Petitioner his *Miranda* rights prior to the interview, and Petitioner agreed to speak with him and signed the form acknowledging that he was waiving his rights. *Id.* at 170-71. The interview which began at 10:57 a.m. was audio taped, and the tape was played for the jury. *Id.* at 172-90. The tape indicated that during the interview (1) Petitioner's wife was present; (2) Officer McKeown read Petitioner his *Miranda* rights; (3) Petitioner read the *Miranda* rights

aloud himself; (4) Petitioner agreed to speak with Officer McKeown; (5) Petitioner swore that his statement was the truth; (6) Petitioner offered detailed, coherent, and responsive answers to Officer McKeown's questions; (7) a doctor examined Petitioner during the course of the interview; (8) Petitioner asked for pain medication; and (9) no one mentioned or questioned Petitioner's mental state. *Id.*

In addition, Petitioner's wife testified that when an officer attempted to speak with Petitioner on April 14, 2002, she told the officer to stop because he was not coherent or conscious. *Id.* at 331. She did not indicate that she asked Officer McKeown to stop his interview on April 15, 2002, because Petitioner was incoherent based on his medicated condition. Lorna Peacock also testified generally that Petitioner was not behaving normally when she visited him on either April 15 or 16, 2002, while he was in the hospital. *Id.* at 277-79.

Based on the record before the state court, the Court concludes that the state court's determinations that Petitioner voluntarily and knowingly waived his *Miranda* rights prior to giving his statement and that even if Petitioner's medical records established that he had received medication prior to giving his statement, his statement would have been admissible are not objectively unreasonable.[4] Although there is some evidence that

---

[4]The Court notes that Petitioner submitted his medical records in the instant case, but was unable to submit them to the state court. The medical records appear to indicate that Petitioner received medication on April 15, 2002. However, as noted previously, the state court explicitly found that even if the medical records indicated that Petitioner had received medication and could have been used to impeach Officer McKeown's testimony, Petitioner's statement would still be deemed knowing and voluntary based on the evidence.

Petitioner may not have been behaving normally while in the hospital, Petitioner's tape recorded statement indicates that Petitioner was advised of his rights, chose to waive those rights, was coherent, and responded to the officer's questions with responsive and detailed answers. Moreover, Petitioner's wife did not protest to the officer questioning Petitioner. The officer testified that although Petitioner was in pain, he was lucid when he made his statement. There is no indication that Petitioner was threatened or coerced to give his statement or that Petitioner's mental state prevented him from understanding his waiver. Finally, the trial court specifically asked Petitioner at trial if he was satisfied with counsel and if counsel did everything he requested, and Petitioner responded affirmatively. (App. A at 452.) As such, the Court concludes that the state court's determination that counsel did not render ineffective assistance by failing to file a motion to suppress or obtain Petitioner's medical records is not an unreasonable application of federal law. Accordingly, these claims are denied pursuant to § 2254(d).

   *C.   Claim Four*

Petitioner asserts that trial counsel rendered ineffective assistance by failing to strike or challenge Jurors Klotheberry, Young, Madison, Jacobs, and Morrison as they were openly biased and incompetent. Specifically, Petitioner contends that Juror Klotheberry stated that she was unsure if she could maintain her independence in the face of pressure from other jurors, Juror Young expressed her opinion of the "bad reputation" of the bar where Petitioner and the victims were drinking on the night of the incident, and Jurors

13

Madison, Jacobs, and Morrison stated that they felt that no one should drink before driving. Petitioner maintains that these statements evidence these jurors' impartiality.

Petitioner raised this claim in his Rule 3.850 motion. Applying *Strickland*, the state court denied relief. (App. I at 6-7.) The state court reasoned that Juror Klotheberry indicated that she would stand up for her beliefs, that Juror Young did not know any of the witnesses who worked at the bar, and that although some jurors indicated that they did not approve of drinking and driving, they were advised by the trial judge that the law required a specific alcohol level to prove DUI, and no one indicated they would be unable to follow the law. *Id.* The state court found, therefore, that the jurors responses during voir dire did not evidence bias. *Id.* at 7. The state court concluded that Petitioner failed to establish that a reasonable probability existed that the outcome would have been different had counsel stricken those jurors. *Id.*

""Prospective jurors are presumed impartial; the challenger to that presumption bears the burden of proving bias, and a conclusory statement that the jurors were biased is insufficient. To maintain a claim that a biased juror prejudiced him, a petitioner must show that the juror was actually biased against him." *Diaz v. Sec'y For Dept. of Corr.*, 2006 WL 3469522, at *4 (S.D. Fla. 2006) (citing *Smith v. Phillips*, 455 U.S. 209 (1982)). Thus, to establish a claim of ineffective assistance of counsel based on the failure to challenge a biased juror, the petitioner must establish that the juror was actually biased.

Upon review of the record, the Court concludes that none of the statements made by the jurors exhibited bias, partiality, or incompetence to serve on the jury. When

questioned, none of the jurors indicated that they would be unable to apply the law. Moreover, the trial judge asked Petitioner if he accepted the jury, and Petitioner responded affirmatively. *Id.* at 62-63. Therefore, the Court finds that Petitioner has demonstrated neither deficient performance nor prejudice. Accordingly, this claim is denied pursuant to § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by Joseph Souza is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**. The Clerk of the Court shall enter judgment accordingly.

2. The Clerk of the Court is directed to close this case.

**DONE AND ORDERED** at Orlando, Florida, this 4th day of November, 2008.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies to:
sc 11/4
Counsel of Record
Joseph Souza